BROWN WHITE & NEWHOUSE LLP
KENNETH P. WHITE (Bar No. 173993)
kwhite@brownwhitelaw.com
333 South Hope Street, 40th Floor
Los Angeles, California 90071
Telephone:  213-613-0500
Facsimile:   213-613-0550

Attorneys for Plaintiff
St. Meer International Industry and Trade Co., Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. MEER INTERNATIONAL INDUSTRY AND TRADE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> QUEST BUSINESS SYSTEMS, INC., THOMPSON A. ELLIOT, JR., and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR: <br><br> 1. Intentional Misrepresentation; <br> 2. Conspiracy to Commit Intentional Misrepresentation; <br> 3. Money Had and Received; <br> 4. Mistaken Receipt; <br> 5. False Promise; and <br> 6. Intentional Interference With Contractual Relations <br><br> **[DEMAND FOR JURY TRIAL]** |

## I.

## INTRODUCTION

1. Plaintiff St. Meer International Industry and Trade Co., Ltd. (hereinafter "PLAINTIFF") is a Chinese company in the import/export business. DEFENDANTS conducted an international fraud scheme stealing more than $750,000 of Plaintiff's money. The scheme worked like this: PLATINFF contracted with Fresho Investment Co., Ltd. ("Fresho"), a Tanzanian company, to buy a large amount of cotton.

1

DEFENDANTS conspired to create an email account, deceptively similar to Fresho's email address, to mislead PLAINTIFF. DEFENDANTS contacted PLAINTIFF from the fake email address, falsely presented themselves as agents of Fresho, sent false invoices and guarantees to PLAITNIFF, and instructed PLAINTIFF to wire funds to satisfy the contract with Fresho to a bank account in this judicial district. In fact, DEFENDANT did not represent Fresho, and have absconded with PLAINTIFF's money and refused to return it.

## II.

## PARTIES

2. PLAINTIFF is a foreign limited company organized under the laws of Quingdao, China with its primary place of business in Quingdao, China.

3. Defendant Quest Business Systems, Inc. ("QUEST") is a corporation organized under the laws of California with its primary place of business in Brentwood, California.

4. Defendant Thompson A. Elliot, Jr. ("ELLIOT") is an individual residing in California. He is the President of QUEST and on information and belief is its sole shareholder.

5. The true names and capacities, whether individual, corporate, associate, or otherwise of the defendants named herein as DOES 1-10, inclusive, are unknown to PLAINTIFFS at the time of filing this Complaint and, therefore, PLAINTIFFS sue said defendants by fictitious names. PLAINTIFFS are informed and believe and based thereon allege that defendant DOES 1-10, and each of them, are legally responsible to PLAINTIFFS for the relief sought herein and/or are necessary parties to this litigation. PLAINTIFFS will ask for leave to amend this Complaint to show the true names and capacities of the defendant DOES 1-10 when the same have been ascertained. Upon information and belief, DOES 1-10 are foreign individuals and foreign entities, and none is a resident of this judicial district for diversity purposes. It is for that reason PLAINTIFF sues these defendants by fictitious names. Each of the

John Doe Defendants ("DOE DEFENDANTS"), along with Quest and Elliot, jointly or severally, are part of the defendants' ongoing criminal activities and responsible for the damages alleged herein. DOE DEFENDANTS participated knowingly in the theft of funds owed to PLAINTIFF by the DEFENDANTS. PLAINTIFF intends to amend this Complaint when PLAINTIFF discovers the true name of any DOE DEFENDANTS.

6. QUEST, ELLIOT, and DOES 1-10 are collectively referred to herein as DEFENDANTS.

7. At all times mentioned herein, on information and belief, based on the sequence of events described below, each of the DEFENDANTS was the agent, servant, employee or joint venturer of each other remaining defendants and in doing the things herein alleged was acting within the scope and course of their agency, and employment to further each other's financial interest. DEFENDANTS, and each of them, acted with the knowledge, notification, consent, and ratification of each of the other DEFENDANTS. All the acts taken by any employees or agents of any of the DEFENDANTS were in fact ratified and adopted by the managing personnel of each named DEFENDANT.

## III.

## JURISDICTION AND VENUE

8. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of China, defendants QUEST and ELLIOT are citizens of California and DOE DEFENDANTS are citizens of an unknown foreign nation, and the amount in controversy exceeds $75,000.

9. This Court has personal jurisdiction over DEFENDANTS because:
   a. QUEST and ELLIOT are citizens of California;
   b. DEFENDANTS and DOE DEFENDANTS purposefully directed their activities, including but not limited to the activities described herein,

to this judicial district by defrauding PLAINTIFF into sending money to this judicial district in order to misappropriate it and hide it;

    c. PLAINTIFF's causes of action arise out of, or result from, the DEFENDANTS' purposefully directed activities, which had foreseeable results in this judicial district;

    d. The DEFENDANTS have purposefully availed themselves of the benefits and protections of the law of this forum by directing monetary transfers into this district;

    e. Each DEFENDANT has directed other DEFENDANTS to do the foregoing on his behalf;

    f. This Court's exercise of personal jurisdiction is reasonable and comports with fair play and substantial justice.

10. Venue is proper in this district under 28 U.S.C. § 1391(b) because QUEST and ELLIOT reside in this district and DEFENDANTS directed PLAINTIFF'S property which is the subject of this suit into this district to distribute it for their benefit and hide it.

## IV.
## ALLEGATIONS COMMON TO THE CLAIM FOR RELIEF

11. On a date unknown in or about July 2013, DEFENDANTS devised a scheme to defraud PLAINTIFF and agreed together to execute it. The scheme was to work as follows:

    a. DOES 1 – 5 would gather information about PLAINTIFF'S purchase contract with a company called Fresho.

    b. DOES 1 – 5 would pose as an agent of Fresho and, using an email address crafted to look confusingly similar to Fresho's address, send fraudulent documents and wire instructions to PLAINTIFF directing PLAINTIFF to send money to a bank account in this judicial district

controlled by QUEST and ELLIOT in order to satisfy PLAINTIFF's contractual debt to Fresho.

    c. Upon receipt of the money, QUEST and ELLIOT would forward it to DOES 6 – 10 for the benefit of all DEFENDANTS.

12. On or about July 25, 2013, Plaintiff entered into a sales contract ("the CONTRACT") with Fresho, a Tanzanian company, to purchase 2,000 bales of cotton at a price of $0.83 per pound for a total purchase price of $751,498. (See Exhibit A.) The CONTRACT provided that PLAITNIFF was to pay Fresho's designated bank as agreed between the parties. The CONTRACT order was placed by PLAINTIFF via email to Fresho's email address of ginnery@freshotz.com. PLAINTIFF had contracted with Fresho before using that address.

13. On a date unknown but before August 3, 2013, DOES 1 – 5 opened an email account in the name ginnery@freshotzs.com, which is confusingly similar to Fresho's legitimate email address – it is identical but for an "s" added to the end ("the FRAUDULENT EMAIL ACCOUNT").

14. Between August 3 and 23, 2013, DOES 1 – 5 sent emails from the FRAUDULENT EMAIL ACCOUNT at an unknown location to PLAINTIFF in China. Those emails were part of the scheme to defraud outlined above:

    a. The emails attached fraudulent invoices (see Exhibits B and C) and fraudulent guarantee letters (see Exhibits D and E) purportedly from Fresho, but actually fabricated by DEFENDANTS, in connection with the sales contract and purchase order. The invoices included the correct contact information of Fresho as the purported sender/seller, and the correct contact information for St. Meer as the buyer. The invoices also included accurate descriptions of the orders placed by PLAINTIFF, including the amount, unit price, and total purchase price ordered and to be delivered to PLAINTIFF.

b. The fraudulent invoices included instructions to PLAINTIFF to pay the total amount due of $751,498 to "M/S. Quest Business Systems Inc." – that is, QUEST, of which ELLIOT is the President and owner – with QUEST'S account number at a bank branch located at 3100 Balfour Road, Brentwood, CA 94513.

c. The fraudulent invoices were purportedly signed by "Freddy Shoo", the director of Fresho. In fact, that signature was falsified by DOES 1 – 5.

d. When PLAINTIFF questioned the payee information, DOES 1- 5 repeated and emphasized the false representations. For instance, on August 23, 2013, DOES 1 – 5 sent PLAINTIFF an email stating the following about the transmission of the FUNDS, asking PLAINITFF to correct a payment receipt that listed Fresho rather than QUEST. That email was calculated to advance the fraudulent scheme by making sure that the wire transfer would be accepted by QUEST's bank for the benefit of all DEFENDANTS:

> Thank you for payment reciept. But small mistake in it.
> Account number and Swift Code is correct but beneficiary name is not correct.
> Check Our USA beneficiary bank account information the correct informtion:
> BENEFICIARY: QUEST BUSINESS SYSTEMS INC
> A/C NO: [redacted in Complaint]
> SWIFT: CHASUS33
> ABA ROUTING NUMBER: 322271627
>
> But you write in beneficiary:FRESHO INVESTMENT CO.LTD (wrong)

> The amount is to be remit into our USA company beneficiary account not into FRESHO INVESTMENT CO.LTD in because FRESHO INVESTMENT CO.LTD account in Tanzania cannot carry this US dollar amount. Kindly note and correct beneficiary name.
> The invoices receive from me is clear on remittance bank.
> Pls change Beneficiary name from FRESHO INVESTMENT CO.LTD into QUEST BUSINESS SYSTEMS INC.
>
> Other information is correct but beneficiary
>
> Pls refer to invoices and make correction in beneficiary name asap.

15. On or about August 28, 2013, Plaintiff wired funds ("the FUNDS") in the amount of $751,498 to QUEST as instructed in the fraudulent emails.

16. In September 2013, Plaintiff learned from Fresho that (1) Fresho had not received the FUNDS, and (2) Fresho did not send the invoices described above, and (3) Fresho did not create the invoices described above. Fresho has refused to deliver the cotton PLAINTIFF bought, as it has not been paid.

17. On an unknown date in or about September 2013, QUEST and ELLIOT transferred the FUNDS from QUEST's account to another account at an unknown location controlled by DOES 6 – 10 for the benefit of all DEFENDANTS.

18. In September 2013, PLAINTIFF sent a demand through JP Morgan, the bank DEFENDANTS were using, for return of incorrectly transmitted funds. On or about September 2, 2013, QUEST and ELLIOT falsely and fraudulently responded to JP Morgan that the transaction was legitimate and that they would not return the

funds. That communication was false and intended to continue the fraudulent scheme and delay PLAINITFF in determining where the funds had gone.

19. PLAINTIFF has demanded return of the FUNDS but DEFENDANTS have not returned the FUNDS.

## FIRST CLAIM FOR RELIEF

### (Intentional Misrepresentation - Against All DEFENDANTS)

20. PLAINTIFF repeats and incorporates by reference the allegations in paragraphs 1 through 19 above, as if fully set forth herein.

21. In or about AUGUST 2013, in emails sent from an unknown location to PLAINTIFF in China, DOES 1 – 5 intentionally made the following material misrepresentations:

    a. That they represented Fresho in connection with the CONTRACT;

    b. That the attached invoices and guarantees were genuine;

    c. That Fresho was designating QUEST's bank account in this judicial district to receive PLAINTIFF's payment on the CONTRACT;

    d. That the FUNDS sent to QUEST's bank account would satisfy PLAINTIFF's debt on the CONTRACT and be used for PLAINTIFF's benefit.

22. In fact, each of these representations were false:

    a. DOES 1 – 5 were con artists. They did not have any right to speak on behalf of Fresho.

    b. The attached documents were forgeries calculated to deceive PLAINTIFF.

    c. Fresho had no idea about the communications and had not designated QUEST's bank account to receive the payment due from PLAINTIFF under the CONTRACT.

    d. DEFENDANTS intended to misappropriate the FUNDS, which would not be used to pay PLAINTIFF's debt to Fresho or held for PLAINTIFF's benefit.

23. DOES 1 – 5 made the misrepresentations knowing they were false and intending to deceive PLAINTIFF.

24. PLAINTIFF justifiably relied on Defendants' misrepresentations. Based on DEFNEDANTS representations and promises, and on their skillful deceit, DEFENDANTS could have reasonably expected PLAINTIFF to rely on their misrepresentations and/or omissions.

25. As a direct result of DEFENDANTS' misrepresentations, PLAINTIFF was harmed because DEFENDANTS misappropriated the $751,498 in FUNDS from PLAINTIFF. PLAINTIFF's reliance on DEFENDANTS' misrepresentations and/or omissions was a substantial factor in causing PLAINTIFF's harm.

26. DOES 1 – 5, in making these intentional misrepresentations, acted on behalf of, and with the knowledge and assent of, all DEFNDANTS and for the benefit of all DEFENDANTS.

27. DEFENDANTS' misrepresentations were malicious, oppressive, despicable, and fraudulent, justifying an award of exemplary damages.

### SECOND CLAIM FOR RELIEF
### (Conspiracy to Commit Intentional Misrepresentation -- Against All DEFENDANTS)

28. PLAINTIFF repeats and incorporates by reference the allegations in paragraphs 1 through 27 above, as if fully set forth herein.

29. There was a plan to commit intentional misrepresentation as described above against PLAINTIFF.

30. DEFENDANTS, and each of them, were aware of the plan by the other DEFENDANTS to commit intentional misrepresentation against PLAINTIFF, and agreed to join that plan, intending that intentional misrepresentation would be

committed against PLAINTIFF and that PLAINTIFF would be harmed as a result.

31. As a direct result of each DEFENDANT's agreement to further the plan of intentional misrepresentation, PLAINTIFF was harmed by the misappropriation of the FUNDS.

## THIRD CLAIM FOR RELIEF
### (Common Count for Money Had and Received – Against All DEFEDANTS)

32. PLAINTIFF repeats and incorporates by reference the allegations in paragraphs 1 through 31 above, as if fully set forth herein.

33. DEFENDANTS are indebted to PLAINTIFF in the amount of $751,498, which was money intended to be used for the benefit of PLAINTIFF.

34. DEFENDANTS did not use the money for the benefit of PLAINTIFF. Instead, DEFENDANTS used the money for their own benefit.

35. DEFENDANTS have not returned to PLAINTIFF any of the money they fraudulently obtained from PLAINTIFF.

36. As a consequence of DEFENDANTS' actions, PLAINTIFF has been damaged in the amount of $751,498, plus interest, the exact amount to be established according to proof at trial.

## FOURTH CLAIM FOR RELIEF
### (Common Count for Mistaken Receipt – Against QUEST and ELLIOT)

37. PLAINTIFF repeats and incorporates by reference the allegations in paragraphs 1 through 36 above, as if fully set forth herein.

38. PLAINTIFF paid money in the amount of $751,498 to QUEST and ELLIOT by mistake;

39. QUEST and ELLIOT did not have a right to any portion of that money;

40. PLAINTIFF has asked QUEST and ELLIOT to return the money;

41. QUEST and ELLIOT have not returned the money to PLAINTIFF; and

42. QUEST and ELLIOT owe PLAINTIFF a total amount of $751,498 plus interest, the exact amount to be established according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### (False Promise – Against All DEFENDANTS)

43. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 42, as if fully set forth herein.

44. In August 2013, in emails sent from an unknown location to PLAINTIFF in China, DOES 1 – 5 – acting on behalf of all DEFENDANTS, with the knowledge and assent of all DEFENDANTS, and for the benefit of all DEFENDANTS -- made a promise to PLAINITFF that they "service the foreign currency exchange transaction requirements" of Fresho and would hold $751,498, amount owed to Fresho by PLANTIFF, for the benefit of Fresho and PLAINTIFF.

45. This promise was important to PLAINTIFF's decision to wire the FUNDS.

46. DEFENDANTS did not intend to perform this promise when they made it.

47. DEFENDANTS intended that PLAINTIFF rely on this promise.

48. PLAINTIFF reasonably relied on DEFENDANTS' promise by wiring $751,498 in FUNDS to QUEST for the benefit of Fresho and PLAINTIFF.

49. DEFENDANTS did not perform the promised act, in that they misappropriated the FUNDS for their own benefit.

50. PLAINTIFF was harmed as a result of DEFENDANTS' conduct.

51. PLAINTIFF's reliance on DEFENDANTS' promise was a substantial factor in causing its harm.

52. DEFENDANTS' actions were malicious, oppressive, despicable, and fraudulent, justifying an award of exemplary damages.

//

## SIXTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations – Against All DEFENDANTS)

53. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 52, as if fully set forth herein.

54. There was a valid contract between PLAINTIFF and a third party, Fresho, for the purchase and sale of 2,000 bales of cotton for a total purchase price of $751,498 pursuant to a sales contract.

55. DEFENDANTS knew of the contract between PLAINTIFF and Fresho.

56. DEFENDANTS intended to disrupt the performance of this contract.

57. DEFENDANTS' conduct prevented performance or made performance more expensive or difficult, in that PLAINTIFF was required to pay $751,498 to Fresho for products purchased from Fresho, but DEFENDANTS prevented performance by fraudulently taking possession of the monies intended for the benefit of Fresho.

58. As a result of DEFENDANTS' conduct, PLAINTIFF was harmed.

59. DEFENDANTS' conduct was a substantial factor in causing PLAINTIFF'S harm.

60. DEFENDANTS' actions were malicious, oppressive, despicable, and fraudulent, justifying an award of exemplary damages.

## REQUEST FOR A CONSTRUCTIVE TRUST

61. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 60, as if fully set forth herein.

62. As a proximate result of the DEFENDANTS' fraudulent misrepresentations and otherwise wrongful conduct as alleged herein, PLAINTIFF is owed a sum of $751,498, the FUNDS which is the amount of funds mistakenly disbursed to the DEFENDANTS' bank account.

63. By reason of the fraudulent and otherwise wrongful manner in which the DEFENDANTS obtained their alleged right, claim or interest in and to the FUNDS, the DEFENDANTS have no legal or equitable right, claim or interest therein, but, instead, the DEFENDANTS are involuntary trustees holding the FUNDS and profits therefrom in constructive trust for PLAINTIFF with the duty to convey the same to PLAINTIFF forthwith.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for Judgment against DEFENDANTS as follows:

1. Compensatory damages, economic and non-economic in excess of the minimal jurisdiction of this Court, in an amount according to proof;

2. For a Constructive Trust on all FUNDS currently possessed by the Defendants, or substitute assets;

3. Exemplary damages;

4. An order requiring DEFENDANTS to account for the FUNDS and all gains, profits and advantages they have derived from the illegal activities herein complained of;

5. For prejudgment interest;

6. For such other and further relief as the Court may deem proper.

DATED: October 25, 2013        BROWN WHITE & NEWHOUSE LLP

By */s/ Kenneth P. White*
KENNETH P. WHITE
Attorneys for Plaintiff
St. Meer International Industry and Trade Co., Ltd.

## DEMAND FOR JURY TRIAL

St. Meer International Industry and Trade Co., Ltd. hereby demands a jury trial.

DATED: October 25, 2013

BROWN WHITE & NEWHOUSE LLP

By    */s/ Kenneth P. White*
KENNETH P. WHITE
Attorneys for Plaintiff
St. Meer International Industry and Trade Co., Ltd.